UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

SUSAN WEINSTEIN, individually, as co-administrator of the Estate of Ira William Weinstein, and as natural guardian of plaintiff David Weinstein, JEFFREY A. MILLER as co-administrator of the Estate of Ira William Weinstein, JOSEPH WEINSTEIN, JENNIFER WEINSTEIN HAZI, and DAVID WEINSTEIN,

Case No.: Misc. 02 Misc. 237

Plaintiffs-Judgment Creditors,

-against-

THE ISLAMIC REPUBLIC OF IRAN, THE IRANIAN MINISTRY OF INFORMATION AND SECURITY, AYATOLLAH ALI HOSEINI KHAMENEI, ALI AKBAR HASHEMI-RAFSANJANI, and ALI FALLAHIAN-KHUZESTANI,

Defendants-Judgment Debtors.

-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF PLAINTIFF – JUDGMENT CREDITOR JENNIFER WEINSTEIN HAZI FOR APPOINTMENT OF A RECEIVER PURSUANT TO CPLR § 5228(a)**


**JAROSLAWICZ & JAROS, LLC**
*Attorneys for the Plaintiff-Judgment Creditor Jennifer Weinstein Hazi*
225 Broadway, 24th floor
New York, New York 10007
(212) 227-2780

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF PLAINTIFF– JUDGMENT CREDITOR JENNIFER WEINSTEIN HAZI FOR APPOINTMENT OF A RECEIVER PURSUANT TO CPLR § 5228(a)**

## PRELIMINARY STATEMENT

Plaintiff/Judgment Creditor Jennifer Weinstein Hazi ("plaintiff") holds an unsatisfied judgment in the amount of $5 million against the defendant-judgment debtor Islamic Republic of Iran ("Iran"). That judgment arises from a terrorist suicide bombing carried out by agents of Iran on February 25, 1996, in which plaintiff's father was murdered.

Bank Melli, an agency and instrumentality of Iran, owns a residential property in Forest Hills, Queens, which is subject to execution by the plaintiff pursuant to § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA").

Plaintiff therefore moves, pursuant to FED. R. CIV. P. 69(a), CPLR § 5228(a) and § 201 of TRIA, for the reasons set forth below, for an order appointing her counsel, Robert J. Tolchin, Esq., as a receiver authorized to sell the Forest Hills property and deliver the proceeds thereof to her in partial satisfaction of her judgment.

## FACTUAL BACKGROUND

### A. The Judgment

On February 25, 1996, U.S. citizen and New York native Ira William Weinstein was severely injured in a suicide bombing carried out by the Hamas terrorist organization in Jerusalem, Israel. On April 13, 1996, after numerous surgeries, amputations and other treatments, Ira Weinstein died of his burns and other injuries.

Plaintiff is the daughter of decedent Ira Weinstein. On October 27, 2000, plaintiff and the other members of the Weinstein family filed a civil action for wrongful death and related torts in the United States District Court for the District of Columbia against the Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and three senior Iranian officials. The action was brought pursuant to the Foreign Sovereign Immunities Act ("FSIA") 28 U.S.C. § 1605(a)(7).

Section 1605(a)(7) of the FSIA creates subject-matter jurisdiction and abrogates the sovereign immunity of designated foreign state sponsors of terrorism such as Iran in civil actions for money damages "for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources … for such an act …". 28 U.S.C. § 1605(a)(7).

On February 6, 2002, the U.S. District Court for the District of Columbia entered judgment in favor of the Weinstein family, finding that Iran and the other defendants had provided tens of millions of dollars to Hamas for the execution of terrorist attacks, had trained Hamas terrorists—including the specific terrorist who carried out the attack in which Ira Weinstein was murdered—in bomb-making and other terrorist tactics, and holding Iran and the other defendants jointly and severally liable to the Weinsteins for a total of $33,248,164.00 in compensatory damages, of which $5 million was awarded to plaintiff. *See Weinstein v. Islamic Republic of Iran*, 184 F.Supp.2d 13, 23 (D.D.C. 2002) (hereinafter: "Judgment").

On October 10, 2002, the Judgment was registered in this Court pursuant to 28 U.S.C. § 1963. *See* dkt. # 1. The judgment therefore has "the same effect as a judgment of" this Court "and may be enforced in like manner." 28 U.S.C. § 1963.

**B. The Property**

Bank Melli owns a residential property located at 135 Puritan Avenue, Forest Hills, New York (Queens County Block 3286, Lot 58) (the "Property"). *See* Exhibit A.

On October 25, 2007, the Department of the Treasury designated Bank Melli a proliferator of weapons of mass destruction, and blocked all property of Bank Melli within the jurisdiction of the United States. *See* Exhibits B, C, D.

As a result of the actions taken by the Treasury the plaintiff is now entitled to enforce her judgment against the Property pursuant to § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), as shown below.

**ARGUMENT**

**A. The Plaintiff Is Entitled to Enforce Her Judgment Against the Property Pursuant to § 201 of TRIA**

Section 201(a) of TRIA provides in relevant part that:

> Notwithstanding any other provision of law … in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Terrorism Risk Insurance Act of 2002, Pub.L. No. 107-297, 116 Stat. 2322 (2002), § 201(a).

As required by § 201 of TRIA, the plaintiff obtained her judgment against Iran on a claim for which Iran was not immune under 28 U.S.C. § 1605(a)(7). *See Weinstein*, 184

F.Supp.2d at 21 ("Plaintiffs have demonstrated by clear and convincing evidence that § 1605(a)(7) of the FSIA applies in this action").

Iran is a foreign state designated as a state sponsor of terrorism under the Export Administration Act of 1979, and the judgment was therefore entered against a "terrorist party" as defined in Section 201(d)(4) of TRIA. *See Weinstein*, 184 F.Supp.2d at 20 ("Defendant the Islamic Republic of Iran is a foreign state and has been designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979, 50 U.S.C.App. § 2405(j) continuously since January 19, 1984.").[1]

Thus, pursuant to § 201 of TRIA, "the blocked assets of" Iran, "including the blocked assets of any agency or instrumentality of" Iran, are "subject to execution or attachment in aid of execution in order to satisfy" the compensatory damages component of the plaintiff's judgment against Iran:

> TRIA … explicitly provides that where a judgment against a terrorist party exists, <u>not only its blocked assets, but the assets of its agencies and instrumentalities can be used to satisfy the judgment</u>. The language of TRIA itself thus indicates that <u>Congress intended to make the agencies or instrumentalities of statutorily defined terrorist parties liable for qualifying judgments rendered against the terrorist party in question</u>."

*Weininger v. Castro*, 462 F.Supp.2d 457, 485 (S.D.N.Y. 2006) (emphasis added).

[1] Section 201(d)(4) of TRIA defines a "terrorist party" as including "a foreign state designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j))."

Thus, plaintiff is entitled to enforce her judgment against the Property provided only (a) that the Property is a "blocked asset" within the meaning of TRIA; and (b) that Bank Melli is an "agency or instrumentality" of Iran.

Both of these conditions are unquestionably met, as demonstrated below:

Section 201(d)(2) of TRIA defines the term "blocked assets" as "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act (50 U.S.C. § 1701 *et seq*.) (hereinafter: "IEEPA").

The IEEPA empowers the President, *inter alia*, to block assets of designated persons in order to safeguard national security. 50 U.S.C. § 1702.

In a decision issued in January 2004, this Court held that Bank Melli's assets were (at that time) not "blocked" under the IEEPA. *See Weinstein v. Islamic Republic of Iran*, 299 F.Supp.2d 63, 69 (E.D.N.Y. 2004). That decision was subsequently adopted by the S.D.N.Y and affirmed by the Second Circuit. *See Bank of New York v. Rubin*, 2006 WL 633315, (S.D.N.Y. 2006) *aff'd* 484 F.3d 149 (2d. Cir. 2007).

However, on October 25, 2007, the Department of the Treasury designated Bank Melli as a proliferator of weapons of mass destruction under Executive Order 13382. *See* Exhibits B, C and D.

Executive Order 13382 was issued by the President pursuant to his authority under IEEPA. *See* Executive Order 13382, 70 Fed. Reg. 38567 (June 28, 2005).

Executive Order 13382 provides that "all property and interests in property" of entities listed in the order or subsequently designated by the Treasury Department "that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of United States persons, <u>are blocked</u> and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." *See id*. (Emphasis added).

As the Treasury Department explained upon designating Bank Melli under Executive Order 13382:

> As a result of our actions today, all transactions involving any of the designees and any U.S. person will be prohibited and <u>any assets the designees may have under U.S. jurisdiction will be frozen</u>.

Exhibit D (emphasis added).

Thus, the October 25 designation of Bank Melli froze all its assets in the United States, including the Property, pursuant to the blocking directive issued by the President (Executive Order 13382) in exercise of his powers under IEEPA.

Therefore, all assets of Bank Melli in the United States, including the Property, are now "blocked assets" within the meaning of TRIA, and the plaintiff is entitled to enforce her judgment against it.

Indeed, the recent decisions of the Second Circuit and the S.D.N.Y. in the matter of *Bank of New York v. Rubin*, are precisely on point here:

The *Rubin* plaintiffs brought turnover proceedings in the S.D.N.Y. under TRIA against funds belonging to Bank Melli and two other Iranian-owned banks, Bank Sepah and Bank Saderat, held by the Bank of New York (the same funds at issue before this Court in *Weinstein v. Iran*, 299 F.Supp.2d 63).

The S.D.N.Y. ruled against the *Rubin* plaintiffs after finding—primarily in reliance on the decision of this Court in *Weinstein*—that the banks' funds were not "blocked assets" within the meaning of TRIA. *See Bank of New York v. Rubin*, 2006 WL 633315 (S.D.N.Y. 2006).

The *Rubin* plaintiffs appealed that decision. On January 9, 2007, during the pendency of the *Rubin* plaintiffs' appeal, the Treasury Department designated Bank Sepah under

Executive Order 13382 as a proliferator of weapons of mass destruction. *See* News Release, Department of the Treasury, *Iran's Bank Sepah Designated by Treasury, Sepah Facilitating Iran's Weapons Program,* 2007 WL 54930 (Jan. 9, 2007).

Two days later, on January 11, 2007, the United States Attorney for the Southern District of New York notified the Second Circuit that all of Bank Sepah's assets in the United States had been blocked as a result of its designation under Executive Order 13382. *See* Exhibit E.

Accordingly, the Second Circuit vacated and remanded *Bank of New York v. Rubin* in respect to Bank Sepah:

> The government, which entered this case as amicus curiae in support of Bank Melli, notified the Court prior to oral argument that the Department of the Treasury has recently frozen the assets of interpleader-defendant Bank Sepah Iran ("Bank Sepah") because of its role as the "financial linchpin of Iran's missile procurement network." *See* News Release, Department of the Treasury, *Iran's Bank Sepah Designated by Treasury, Sepah Facilitating Iran's Weapons Program,* 2007 WL 54930 (Jan. 9, 2007) (internal quotation marks omitted) … we vacate … and remand so that the district court may determine whether the Rubin defendants may now attach Bank Sepah's assets deposited in the registry of the district court.

*Bank of New York v. Rubin*, 484 F.3d 149, 150-151 (2d. Cir. 2007).

On remand, the district court granted the *Rubin* plaintiffs' motion under TRIA for turnover of the Bank Sepah funds. *See Bank of New York v. Rubin*, 2007 WL 2044581 (S.D.N.Y. July 16, 2007).[2]

[2] The funds amounted to less than $18,000.

Thus, just as Bank Sepah's assets were blocked under IEEPA and became subject to § 201 of TRIA as the result of Bank Sepah's designation under Executive Order 13382 in January 2007, exactly so, the assets of Bank Melli are also now blocked under IEEPA—and therefore constitute "blocked assets" within the meaning of TRIA—by operation of Bank Melli's designation under Executive Order 13382 on October 25, 2007.

The Property is thus clearly a "blocked asset" within the meaning of § 201 of TRIA.

Therefore, the sole remaining question under § 201 of TRIA is whether Bank Melli is an "agency or instrumentality" of judgment debtor Iran. This question is easily answered in the affirmative. The FSIA defines an agency or instrumentality of a foreign state to mean any entity;

> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).

As this Court noted in its earlier decision in this matter, Bank Melli freely acknowledges that it "is an Iranian corporation, founded in 1927 and organized under the banking laws of Iran" and that "[t]he government of Iran owns the stock of Bank Melli." *Weinstein*, 299 F.Supp.2d at 69.

Thus, Bank Melli is "a separate legal person … a majority of whose shares or other ownership interest is owned by" Iran and "is neither a citizen of a State of the United States

… nor created under the laws of any third country". 28 U.S.C. § 1603(b). Therefore, Bank Melli is incontrovertibly an agency or instrumentality of Iran. *See also e.g. Itek Corp. v. First Nat. Bank of Boston*, 730 F.2d 19, 25 and 20 (1st Cir. 1984) (noting that Bank Melli is owned by Iran and holding that Bank Melli is "an instrumentality of the Iranian government"); *Wyle v. Bank Melli of Tehran*, Iran, 577 F.Supp. 1148 (D.C.Cal. 1983) ("It is...undisputed that defendants Bank Melli and PSO are 'agenc[ies] or instrumentalit[ies] of a foreign state' as defined by 28 U.S.C. § 1603(b)").

Accordingly, the plaintiff is entitled to enforce her judgment against the Property under § 201 of TRIA.

## B. A Receiver Should be Appointed to Sell the Property Pursuant to CPLR § 5228(a)

Rule 69(a) of the Federal Rules of Civil Procedure provides that "[t]he procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held…." FED. R. CIV. P. 69(a).

New York CPLR § 5228(a) authorizes this Court to appoint a receiver to "sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment." CPLR § 5228(a).

Thus, under CPLR § 5228(a), which is applicable to this proceeding by operation of FED. R. CIV. P. 69(a), this Court is empowered to appoint a receiver to sell the Property and to remit the proceeds of the sale to the plaintiff in partial satisfaction of her judgment.

Proceeding by means of a receiver, as opposed to having the property sold at auction by the United States Marshal is preferable, since a receiver will be able to maximize the funds obtained from such a sale by using regular commercial means, such as advertising and real

estate brokers, to obtain the best price for the property. A Marshal's auction often results in a property being sold for less than the maximum possible price. Maximizing the sale price obviously benefits both the plaintiff (by increasing recovery) and the judgment debtor (by reducing the judgment debt).

CPLR § 5228(a) further provides that "[a] receiver shall be entitled to necessary expenses and to such commissions, not exceeding five percent of the sums received and disbursed by him, as the court which appointed him allows, but if a judgment creditor is appointed receiver, he shall not be entitled to compensation." § 5228(a). (Emphasis added).

Accordingly, appointing plaintiff's counsel, Robert J. Tolchin, Esq., as the receiver to sell the Property makes good economic sense for all parties since Mr. Tolchin would serve without compensation, thereby increasing the net return on the Property and diminishing the outstanding judgment debt.

## CONCLUSION

For the reasons set forth herein, the within motion should be granted.[3]

Dated: New York, New York
October 31, 2007

Respectfully submitted,

JAROSLAWICZ & JAROS, LLC
*Attorneys for the plaintiff-judgment creditor*
*Jennifer Weinstein Hazi*

by: S/ Robert J. Tolchin
Robert Tolchin

225 Broadway, 24th floor
New York, New York 10007
(212) 227-2780

[3] Public records indicate that the current tenant of the property is Mr. Gholamreza Rahi. Though the tenant has neither right to notice of this motion nor standing to oppose it, plaintiff is providing Mr. Rahi notice of this motion solely to foreclose any future claim that he was unaware of this proceeding. Plaintiff is also providing *ex gratia* notice of this motion to the United States, so that the United States can present its position, if any, in respect to the motion.